UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 17-CV-4688 (JFB) (SIL)

———————————

ABDULLAH M. ADLAH,

Plaintiff,

VERSUS

EMERGENCY AMBULANCE SERVICES,

Defendant.

———————————

**MEMORANDUM AND ORDER**
June 22, 2018

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Abdullah Adlah ("plaintiff"), proceeding *pro se*, brings this civil rights action, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* against Emergency Ambulance Services ("EAS" or "defendant"). Presently before the Court is defendant's motion to dismiss plaintiff's discrimination claims in the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the Court denies defendant's motion.

I. BACKGROUND

A. Facts

The following facts are taken from the Amended Complaint ("AC," ECF No. 14) and are not findings of fact by the Court. Instead the Court will assume these facts to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party. In deciding a motion to

---

[1] The Court notes that the Amended Complaint also contains a retaliation claim, which was not the subject of the instant motion.

dismiss, the Court may take judicial notice of public records, including court filings. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). The Court also considers exhibits which are attached or integral to the complaint. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

Abdullah Adlah, a Lebanese Muslim, was hired by defendant as an Emergency Medical Technician ("EMT") on April 1, 2015. (*See* ECF No. 21-2 at 5.) According to plaintiff, in June 2015, two partners that he worked with, Matt Lindstat and Victoria Weiss, referred to plaintiff as "that [A]rab kid" and were "very brutal and rude towards [him]." (AC at 5.) Plaintiff allegedly filed a complaint with management and was forced to switch shifts. (*Id.*) Plaintiff claims that he was taken off a shift that worked around his children's and their school's schedule. (*Id.*) Meanwhile, plaintiff alleges that the two partners were "rewarded" by allowing them both to work with one another on the same ambulance. (*Id.*)

In November 2015, plaintiff alleges that he overheard the dispatcher, Dawn "talking badly" to their supervisor, Jeremy Jubinville about him. (*Id.*) Plaintiff alleges that the dispatcher referred to him as "that ALLAH ARAB Kid" and made remarks that plaintiff was always late. (*Id.*) Plaintiff allegedly responded to these remarks stating, "actually I'm always early and the times you think I'm late is because Ken [Kriska] who was the supervisor 'forgets' to adjust my schedule for times he's previously approved since I was coming from school and was forced off my original shift." (*Id.*) Plaintiff claims that he then went to his supervisor, Jubinville, and told him that he did not appreciate the dispatcher calling him those names. (*Id.*) He further explained, "I'm not Arab I'm Lebanese and there's a huge difference." (*Id.*) According to plaintiff, Jubinville remarked "there's nothing wrong with that because she doesn't know there's a difference." (*Id.*) Plaintiff then alleges that he asked his supervisor, "is it appropriate to call a Spanish employee 'that Mexican kid?'" (*Id.*) Jubinville allegedly responded, "that was different." (*Id.*) Plaintiff then asked his supervisor, "how about an African American person, is it ok to call him that black kid" to which Jubinville allegedly responded, "yes that's ok because he's black but that's not the same as calling you 'Arab' because you are." (*Id.*) Plaintiff's supervisor allegedly stated that the dispatcher was just describing plaintiff because she did not know his name. (*Id.*)

Plaintiff further alleges that later in November 2015, while working with another supervisor, Bob Crawford, he was asked to stop at Dominos so that Crawford could get some food. (*Id.*) When Crawford came back into the ambulance, he offered plaintiff a slice of pepperoni pizza. Plaintiff thanked Crawford but responded that he did not eat pork. Crawford then allegedly made fun of plaintiff and put the pizza in his face telling him to "try a bite." (*Id.*)

According to the complaint, on December 7, 2015, plaintiff told Jubinville that he needed to leave work early on December 13, to which Jubinville responded that as long as there were no emergency calls it would not be a problem for plaintiff to leave early. (*Id.* at 6.) On or about December 9, plaintiff had a phone conversation with Randy[2] (the CEO) and management about the comments made by Dawn and leadership. (*Id.*) Randy was unaware of any of the complaints plaintiff had made. (*Id.*) Plaintiff explained to Randy that he had brought his

---

[2] Although it is not entirely clear from the Amended Complaint, for purposes of the instant motion, the Court assumes that Randy and Andrew Viskovich, discussed *infra*, are the same person, the CEO of EAS.

2

complaints to the attention of the managers on multiple occasions and nothing had been done. (*Id.*) During that conversation, Andrew Viskovich allegedly commented that the company was upset that plaintiff had told a logistics worker that he felt targeted and was going to sue the company. (*Id.*) Management also allegedly stated to plaintiff that dispatchers and logistics employees are not leadership, though plaintiff alleges that, in a previous conversation, management had told him the contrary. (*Id.*) Plaintiff further alleges that Jubinville agreed that plaintiff could leave his December 13 shift an hour early, but that he did state at some point that the dispatcher has the final say. (*Id.*) On December 14, plaintiff was sent into the manager's office with Jubinville, who informed him that he had to write him up for leaving early the day before. (*Id.*) Jubinville allegedly stated that after their phone conversation on December 9, their discussion about leaving work an hour early was "null and void" since the CEO overrode his decision to allow plaintiff time off. (*Id.* ("Anything approved prior to the conversation on the 9th is irrelevant.").) Plaintiff agreed to sign the write-up as long as he was able to write on it that Jubinville had given him approval prior to December 13. (*Id.*)

According to the complaint, on December 16, plaintiff had a conversation with Viskovich in which Viskovich allegedly stated that plaintiff was not being singled out. (*Id.*) Plaintiff alleges, "the Supervisors told me the CEO specifically stated, 'Abdullah is not to be let out early' and I felt that statement singled me out." (*Id.* at 7.) Viskovich allegedly stated, "they're not targeting [you]" and offered to open a case if that was how plaintiff felt. (*Id.*) Plaintiff allegedly told Viskovich that he did feel targeted and he would appreciate his opening a file: "I told him I had an issue stating I feel targeted and they had an issue with the fact I was defending my religious beliefs." (*Id.*) Plaintiff alleges that Viskovich stated that he did not have an issue with plaintiff defending himself, but had an issue with plaintiff stating that he felt targeted. (*Id.*) With regard to the June incident and the comments that were made, plaintiff alleges that—in the course of this conversation—Viskovich began by claiming that he did not know about it, and then stated that he "took care" of it. (*Id.*) Viskovich allegedly stated "it's how [plaintiff] take[s] it in" and "it's okay for them to say the Muslim kid" when referring to him because plaintiff is Muslim. (*Id.*)

According to the complaint, somewhere between December 17 and December 20, dispatcher Kim[3] informed plaintiff that the supervisors had switched him from his normal ambulance and partner to another ambulance. (*Id.*) According to plaintiff, this switch was significant because the new ambulance he was put on was a standby hospital, which a worker cannot leave until relieved by the next crew. (*Id.*) Plaintiff allegedly stayed on his entire shift but was told that the covering medic was running late and they would have to wait for him. (*Id.*) Plaintiff spoke with the dispatcher, who then sent over another EMT to relieve plaintiff from his shift. (*Id.*) Plaintiff was then allegedly suspended for this until he could meet with management. (*Id.*) Plaintiff alleges that he was forbidden by management from saying that he felt he was being treated unfairly. (*Id.*) On December 23, plaintiff was asked to meet with management. (*Id.*) In a conversation with Kriska, Viskovich and Omri Asta, Human Resource Director,

---
[3] Plaintiff did not provide Kim's full name in the Amended Complaint.

plaintiff was informed that he was being terminated because the company did not feel comfortable employing him due to his "'blatant insubordination' of conversing with people stating that [he] felt targeted." (*Id.*)

B. Procedural History

The instant lawsuit arises from the United States Equal Employment Opportunity Commission ("EEOC") charge filed by plaintiff against his former employer, EAS. (ECF No. 21-2.) In his administrative charge, filed on March 15, 2017, plaintiff alleged that EAS discriminated and retaliated against him on the basis of his national origin and religion, in violation of Title VII of the Civil Rights Act. (*See id.* at 2.) On June 16, 2017, the EEOC issued a Right to Sue letter informing plaintiff that "[t]he EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for [plaintiff]." (AC at 9-10.)

Plaintiff filed a Complaint with this Court on August 10, 2017, alleging a Title VII claim for discrimination and retaliation based on national origin and religion. (ECF No. 1 at 1, 3.) On January 10, 2018, plaintiff filed an Amended Complaint. Defendant filed the instant motion to dismiss plaintiff's national origin and religious discrimination claims as alleged in the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 26, 2018. Plaintiff filed his opposition to defendant's motion on March 23, 2018, and defendant filed its reply on April 9, 2018.[4]

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-

---

[4] Defendant contends that plaintiff impermissibly raises a hostile work environment claim for the first time in his opposition to defendant's motion to dismiss. (Def.'s Reply Mem. at 2.) Although a plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss," *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013), the Court is mindful that when considering a motion to dismiss a *pro se* complaint, the Court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). In this case, as discussed further *infra*, the Court liberally construes the complaint to include a hostile work environment claim.

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part & rev'd in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

Finally, where, as here, the plaintiff is proceeding *pro se*, courts are "obliged to construe his pleadings liberally." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (stating that a *pro se* plaintiff's pleadings must be interpreted "to raise the strongest arguments that they suggest" (citation and internal quotation marks omitted)). However, a *pro se* plaintiff's complaint, while liberally interpreted, still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. 662); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### III. DISCUSSION

#### A. Title VII Discrimination

Title VII prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that '(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.'" *Chang v. N.Y.C. Dep't for the Aging*, No. 11 CIV. 7062(PAC) (JLC), 2012 WL 1188427, at *4 (S.D.N.Y. Apr. 10, 2012) (quoting *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010)), *report & recommendation adopted*, 2012 WL 2156800 (S.D.N.Y. June 14, 2012).

At the pleading stage, a Title VII plaintiff need not allege specific facts establishing each element of a *prima facie* case of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Under *Iqbal* and *Twombly* . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 86. In his complaint, "a plaintiff must allege that the employer took adverse action against [him] at least in part

for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. "'[A]t the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory intent.'" *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "Rather, what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (citations and internal quotation marks omitted).

Defendant argues that plaintiff's discrimination claims should be dismissed because most of the alleged actions do not constitute "adverse employment actions" under Title VII and the Amended Complaint does not include sufficient factual allegations to support a conclusion that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. For the reasons set forth below, the Court denies defendant's motion to dismiss plaintiff's Title VII discrimination claims.

1. Adverse Employment Actions

Defendant concedes that plaintiff's termination constitutes an adverse employment action under Title VII, but argues that plaintiff's allegations of unfavorable changes to his schedule, and that EAS "suspended" him prior to his termination do not constitute adverse employment actions. (Def's. Mem. at 5-6.)

To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)). "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Collins v. Potter*, No. 05-CV–3474 (JFB)(LB), 2008 WL 4104459, at *4 (E.D.N.Y. Aug. 29, 2008) (quoting *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002)). An "adverse employment action" is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

The Amended Complaint provides several incidents that plaintiff claims were adverse employment actions. First, plaintiff alleges that his shift changed following his complaint to management about coworkers and supervisors allegedly harassing him about his nationality and religion. (AC at 4.) Plaintiff alleges that he was forced out of his shift that worked around his children and school schedule. (*Id.* at 5.) Further, plaintiff alleges that his previously approved time off was later denied following his complaints to management regarding the alleged discriminatory comments made by coworkers. (*Id.* at 4.) Finally, plaintiff alleges that he was suspended following an

incident in which plaintiff, who had already completed his shift and was waiting to be relieved by the next crew, swapped with another EMT who offered to relieve him. (*Id.* at 7.)

The Court finds that plaintiff's allegations regarding shift changes and suspension could plausibly qualify as adverse employment actions depending on the circumstances. Indeed, "where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." *Williams v. Ford Motor Co.*, No. 12–CV–0411, 2014 WL 1572302, at *13 (W.D.N.Y. Apr. 18, 2014) (collecting cases). Thus, while a "materially adverse change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities,'" *Galabya*, 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank & Tr. Co.*, 993 F.2d 132, 136 (7th Cir. 1993)), what ultimately constitutes an adverse employment action is assessed on a case-by-case basis, *see Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). Thus, this fact-specific determination cannot be resolved on a motion to dismiss in this case particularly in light of plaintiff's *pro se* status.

In addition, Plaintiff contends that he was actually discharged from his employment without legitimate cause and on the basis of his national origin and religion. In particular, plaintiff alleges that, when he was being terminated, management explained that the reason for his termination was that the company did not feel comfortable employing him due to his "'blatant insubordination' of conversing with people stating that [he] felt targeted." (AC at 7.) Such discharge from employment obviously would be considered an adverse employment action. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996) (noting "one of the elements of a *prima facie* case of discriminatory discharge, as one might expect, is that the employee was discharged. This element may be satisfied by a showing of an actual or constructive discharge." (internal citation omitted)). Thus, plaintiff's Amended Complaint has adequately pled at least one adverse employment action sufficient to survive a motion to dismiss.

The Court further notes that, even if plaintiff's other allegations of discrimination do not independently constitute adverse employment actions, they may provide relevant background evidence regarding the second factor of plaintiff's discrimination claim, namely whether the plaintiff's national origin and/or religion was a motivating factor in the defendant's decision to fire him. *See Vega*, 801 F.3d at 88 ("Vega's other allegations of discrimination, even if they do not independently constitute adverse employment actions, provide 'relevant background evidence' by shedding light on [d]efendant's motivation and thus bolster his claim that [d]efendants treated him differently because of his ethnicity." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 S.Ct. 2061, 153 L. Ed. 2d 106 (2002))).

2. Inference of Discrimination

Defendant also argues that plaintiff's claims fail because the Amended Complaint does not include sufficient factual allegations to support a claim that the alleged adverse employment actions occurred under circumstances giving rise to an inference of discrimination. (Def.'s Mem. at 7-11.) Specifically, defendant argues that plaintiff's discrimination claims fail because he did not allege that any of the adverse employment actions occurred by EAS's management or that such acts occurred due to plaintiff's national origin or religion. (*Id.*) The Court

disagrees and finds that plaintiff has set forth sufficient allegations to raise a plausible inference of discrimination.

In general, "[a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the plaintiff's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted). The plaintiff may also prove discrimination by "creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87.

Whatever category or combination of categories of evidence a plaintiff relies on to allege a discrimination claim, the Second Circuit has made clear that "at the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* (quoting *Littlejohn*, 795 F.3d at 311). Thus, in making the plausibility determination, a district court "must be mindful of the 'elusive' nature of intentional discrimination" and that "rarely is there 'direct, smoking gun, evidence of discrimination.'" *Id.* (internal quotation marks and citations omitted).

In seeking to demonstrate that he received less favorable treatment than employees not in a protected group, a plaintiff may demonstrate he "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229-30 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Generally, "[w]hether two employees are similarly situated . . . presents a question of fact," rather than a legal question to be resolved on a motion to dismiss. *Id.* At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination. *Id.* (concluding that plaintiff plausibly alleged he and comparator employees were similarly situated even though he did not plead facts about the comparator employees' job function, experience, qualifications, and rate of pay).

In this case, at the pleading stage, the Court assumes the truth of plaintiff's factual allegations for purposes of this motion. After carefully considering the defendant's motion, the Court finds that plaintiff has satisfied the minimal showing required at this stage to plausibly allege that the defendant's adverse actions towards plaintiff were motivated at least in part by a discriminatory reason.

When pieced together, the Court finds that the allegations in the Amended Complaint create a "mosaic" of facts, which if true, give rise to a plausible inference that the defendant was motivated by bias against plaintiff's national origin and religion. *See Vega*, 801 F.3d at 87. Specifically, plaintiff alleges that coworkers were making inappropriate comments to plaintiff about his nationality and religion. (AC at 4-7.) When plaintiff complained to management, he was allegedly told that there was nothing wrong with what his coworkers were saying and that plaintiff should not tell anyone that he felt targeted. (*Id.* at 6-7.) Further, plaintiff alleges that those coworkers were "rewarded . . . by allowing both of them to work with one another on the same ambulance" whereas

plaintiff was removed from his shift that worked around his children and school schedule. (*Id.* at 5.) Though plaintiff does not specifically identify the religion or national origin of his coworkers, drawing all reasonable inferences in plaintiff's favor, this is sufficient to state a plausible inference of discrimination. *See Bakeer v. Nippon Cargo Airlines, Co.*, No. 09 CV 3374 (RRM), 2011 WL 3625103, at *27-28 (E.D.N.Y. July 25, 2011) (finding plaintiffs' allegations that their comparators were offered different terms and conditions of employment was sufficient to establish that they were similarly situated, without pleading additional facts about how they were similarly situated); *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (denying motion to dismiss even though the complaint was "thin on specifics—both as to how each comparator [was] similarly situated to [plaintiff] and what disparate treatment he or she was subjected to").

In November 2015, plaintiff allegedly complained to his supervisor, Jubinville, that he did not appreciate the dispatcher calling him "that Allah Arab Kid." (AC at 5.) The supervisor allegedly responded that there was nothing wrong with that, and that the dispatcher was just describing plaintiff because she did not know his name. (*Id.*) Another supervisor allegedly put pepperoni pizza in plaintiff's face after he explained that he would not eat a slice because he does not eat pork. (*Id.*) In early December 2015, plaintiff relayed his complaints to the CEO who responded that the company was upset that plaintiff stated that he felt targeted. (*Id.* at 6.) Subsequent to these complaints, plaintiff was denied his formerly approved time off. (*Id.*) Plaintiff allegedly requested that the CEO open a file because he felt targeted. (*Id*. at 7.) In response, the CEO allegedly stated that "it's ok for them to say the Muslim kid" when referring to plaintiff because he is Muslim. (*Id.*) Within a week of plaintiff's complaints, he was suspended and ultimately terminated for allegedly telling employees and management that he felt targeted. (*Id.*) Courts have found these types of allegations sufficient to satisfy the minimal pleading burden for discrimination claims at the motion to dismiss stage. *See Chertkova*, 92 F.3d at 91 ("The circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus."); *Yang v. Dep't of Educ. of City of N.Y.*, No. 14-CV-7037 (SLT) (RLM), 2016 WL 4028131, at *7-8 (E.D.N.Y. July 26, 2016) (finding that frequent comments made by a plaintiff's supervisor pointing out that the plaintiff was Chinese were sufficient to give rise to an inference of national origin discrimination at the motion to dismiss stage).

When viewed together, the plaintiff's allegations of EAS's alleged disparate treatment of plaintiff and of the discriminatory comments made by plaintiff's coworkers and supervisors, including their behaviors in reaction to plaintiff's complaints, give rise to a plausible inference of discrimination based on plaintiff's national origin and religion.

Accordingly, defendant's motion to dismiss plaintiff's Title VII discrimination claims on the basis of national origin and religion is denied.

B. Hostile Work Environment Claim

1. Scope of EEOC Charge

Defendant argues that plaintiff's hostile work environment claim exceeds the scope of his EEOC charge and, therefore, was not administratively exhausted. For the reasons set forth below, the Court disagrees and

9

concludes that plaintiff's hostile work environment claim is reasonably related to the charge he filed with the EEOC.

Generally, to bring a Title VII discrimination claim in federal district court, a plaintiff must first exhaust her administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)). However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that which 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359-69 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (stating claim is reasonably related where "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised").[5]  In determining whether a claim is "reasonably related" to the EEOC charge, "the focus should be 'on the factual allegations made in the [EEOC] charge itself,'" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201-02 (2d Cir. 2003)).

Despite defendant's arguments to the contrary, the Court finds that plaintiff's hostile work environment claim is reasonably related to the charge he filed with the EEOC. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). To give the EEOC adequate notice of a hostile work environment claim, the EEOC charge must reference "repeated conduct or the cumulative effect of individual acts" directed toward the plaintiff. *See Mathirampuzha*, 548 F.3d at 77 (finding hostile work environment claim not reasonably related to discrimination claim filed with the EEOC because plaintiff's "EEOC complaint recount[ed] nothing more than a single act of physical and verbal abuse"); *see also Pilgrim v. McGraw–Hill Cos., Inc.*, 599 F. Supp. 2d 462, 491 (S.D.N.Y. 2009) (finding hostile work environment claim reasonably related to EEOC charge because charge referred to "systemic" discrimination and alleged that supervisor "demean[ed]" plaintiff with "foul and offensive" language); *cf. Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (finding hostile work environment claim not reasonably related to EEOC charge because EEOC charge only made general allegations regarding

---

[5] Two other kinds of claims may be considered "reasonably related": those alleging "retaliation by an employer against an employee for filing an EEOC charge," and those alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993). Neither is at issue in this case.

10

employer's disparate treatment of men and women).

Here, as defendant admits, plaintiff's Amended Complaint includes a narrative identical to the one he included in his EEOC charge, which references repeated instances of inappropriate comments and conduct sufficient to put the EEOC on notice of a possible hostile work environment claim. (Def.'s Reply Mem. at 5; AC at 5-7.) Although plaintiff only checked the boxes for "Religion" and "National Origin" in his EEOC charge, that charge contained the factual basis for a hostile work environment claim. Given that the EEOC was clearly aware of those facts, plaintiff's hostile work environment claim is "reasonably related" to the discrimination and retaliation claims raised in his EEOC charge. As such, plaintiff's hostile work environment claim is considered exhausted for purposes of this lawsuit.

2. Hostile Work Environment

Defendant argues that the conduct plaintiff refers to in his Amended Complaint does not state a viable hostile work environment claim. As set forth below, in light of plaintiff's *pro se* status and the detailed allegations in his Amended Complaint, the Court concludes that this claim should survive the motion to dismiss.

In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013). Relevant factors to consider in determining whether an environment is sufficiently hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). A plaintiff is not required to establish a *prima facie* case of hostile work environment; he need only make a short and plain statement of the claim that shows entitlement to relief and gives defendant fair notice of the claim for hostile work environment and the grounds upon which that claim rests. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002).

"Ultimately, to avoid dismissal under [Rule] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007 (alteration in original) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). In considering plaintiff's claims, the Court is mindful of the highly context-dependent nature of this analysis, which underpins the Second Circuit's "repeated[] caution[] against setting the bar too high" for workplace discrimination claims facing a 12(b)(6) motion to dismiss. *Id.* (quoting *Terry*, 336 F.3d at 148).

Nonetheless, "the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer," for example, by showing that the harassing conduct was by supervisory coworkers or, in the case of non-supervisory coworkers, by "showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005*), abrogated*

*on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Applying these standards, the Court finds that plaintiff has plausibly alleged a claim for hostile work environment in violation of Title VII. Plaintiff has plausibly alleged that he suffered "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Patane*, 508 F.3d at 113. Plaintiff alleges that for approximately six months he was subjected to repeated comments about his national origin and religion from both coworkers and supervisors. (AC at 4-7.) Plaintiff alleges that when he informed management that he felt targeted because of his religion and national origin, he was told that he was not allowed to state that he felt targeted. (*Id.* at 4, 7.) Such allegations are sufficient to state a plausible claim and give defendant fair notice of plaintiff's claim. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir. 2007) (finding plaintiff's allegations as to a hostile work environment sufficient under *Swierkiewicz*, where plaintiff alleged that her manager and other managers "repeatedly made degrading comments" regarding plaintiff's age). This is sufficient to state a hostile work environment claim.

Furthermore, the alleged harassing conduct was by both non-supervisory and supervisory workers. In fact, plaintiff made numerous complaints to management about the alleged harassment and no remedial action was taken. Therefore, these allegations as a whole are sufficient at the motion to dismiss stage to state a plausible hostile work environment claim. Accordingly, defendant's motion to dismiss plaintiff's hostile work environment claim is denied.

IV. CONCLUSION

For the reasons set forth herein, the Court denies defendant's motion to dismiss in its entirety. The parties shall proceed with discovery. The Clerk of the Court is directed to mail a copy of this Order to the *pro se* plaintiff.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: June 22, 2018
Central Islip, New York

\*\*\*

Plaintiff is proceeding *pro se*, 10 Lexington Court, Coram, New York 11727. Defendant is represented by Gregory Bennett, Eustace, Marquez, Epstein, Prezioso & Yapchanyk, 55 Water Street, 29th Floor, New York, New York 10041.